Ok, we'll move to our second argument of the morning, it's in Appeal 21-1635, captioned Stanley Felton v. Lebbeus Brown and others. Ok, Ms. Marshall, whenever you're ready, good morning. May it please the Court, Plaintiff Gessa Calafi was held in solitary confinement for well, for 678 days without a hearing before a panel that had the jurisdiction to keep him there. That is more than twice as long as this Court has stated is sufficient to state a claim for procedural due process under Marion. Yet when Mr. Calafi attempted to amend his complaint to include a claim for this violation, the District Court failed to even engage with his claim on the merits. That was error. A broad construction of Mr. Calafi's complaint clearly states a claim for procedural due process violations. Now the State provides three reasons why it thinks this Court should not allow Mr. Calafi's complaint to proceed. First, it maintains that Mr. Calafi's complaint does not state a claim for procedural due process. Second, it argues that Mr. Calafi should have brought this claim in State Court. And finally, it maintains that Mr. Calafi did not name the proper defendants. Each of those arguments, each of those arguments fails, and I'd like to address each of them in turn, but I'd like to address your question first, Your Honor. Thank you. You know, when Mr. Felton provides a copy of the August order to Warren Bouton, Warren Bouton says, you know, you're not in AC because of what happened before, but you're in AC because of an August 5th, 2015 hearing. What is that August 5th, 2015 hearing? Based on a broad construction of the complaint, we don't 100% know. What we do know, and what is legally relevant for this case, is that it couldn't have been a hearing that was brought by a competent panel, because under Wisconsin state law, once the panel lacked jurisdiction, the only remedy was to remove Mr. Calafi from administrative confinement and provide him with a hearing anew, and his complaint alleges that he was never removed from an administrative confinement until he was removed from the prison in November of 2015, so long after that hearing. And were there other, was it referring to, were there other disciplinary proceedings that formed the basis of some sort of concurrent administrative confinement period that Warren Bouton was referring to? I was just trying to figure out, on the record, there seemed to have been other hearings during 2015, including this August 5th one, and I just couldn't put my fingers on the record on what those hearings were about. So again, we are in this state confined just to what is available in Mr. Calafi's complaint, so I agree, Your Honor, that it's not entirely clear. He's quoting from Warden Bouton's response, denying him release from administrative confinement. Based on the complaint, though, there is the improper hearing on January 15th, 2014, and then not a hearing again that's mentioned until June 1st, 2015. And so while, again, it is our argument and Mr. Calafi's argument that neither, that hearing was improper because it was before a panel that lacked jurisdiction to hold him, it is at the very least thought as 509 days. But that's not exactly true, because in paragraph 12 of the amended complaint, he refers to a December 27th, 2014 hearing. I think I have the right paragraph. And so again, Your Honor, regardless of whether or not, um, there is, um, there is, which paragraph? Paragraph 12. Um, the bottom of page 4, the second to last line, which is in paragraph 12. He refers to a 12-27-2014 hearing. That was a re-hearing granted by the CCE and WDOC from December 27th, 2014. Yes, Your Honor. So again, even if we look to that time period, it is over the 240-day floor set in Marion. I think broadly construing the complaint, Mr. Calafi is not alleging that that was a proper hearing. But if we look to, so there's the first 678-day time period, which again, based on Wisconsin law, this panel did not have jurisdiction to, um, hold this. But why, you're talking about the panel's jurisdiction. Yes, Your Honor. Why isn't that just a state regulation that can't form the basis of the minimal federal due process requirements? It is a minimum afforded by the 14th Amendment that someone be allowed a hearing in front of a panel of competent jurisdiction. In this case, state law does determine that. And that's an analysis that federal courts engage in all the time. If this was a raised judicata claim, you would look to see whether or not the state panel had jurisdiction to hear the claim under state law. The same is true here. Does that mean, though, that the timing requirement imposed by state law is, if violated, is sufficient to establish a due process violation? Uh, if... Let me give you a crazy hypothetical. Absolutely, Your Honor. Okay. Let's say that the hearings had to be held, the administrative hearings to continue disciplinary segregation had to be held every 60 days. And they have to be held in hearing room A. Okay? And it's in a statute or it's in a regulation. And it turns out that, well, it had to be, this one was held in hearing room B because hearing room A was being recarpeted. Okay. Same analysis of the due process issue? It was an incompetent hearing. The panel did not have any authority to convene in hearing room B. If under Wisconsin state law, that is the case. And a panel is totally removed of jurisdiction. Okay. Now, how do you connect that to the U.S. Constitution as opposed to state law? There is a state law analysis here, but it is just to ask whether or not the panel has jurisdiction. State law, just like a state court, Your Honor, is vested with power and jurisdiction to hold a hearing under state law. And if you were to do an analysis of whether or not a state court was competent, you would look to whether or not they were competent under state law. The same analysis is present here. It's not whether or not that they've complied with the regulation. It's whether or not under state law they have jurisdiction. Now, under state law, the analysis in this case does happen to be whether or not they complied with the regulation. But it's not a question of whether or not the under state law, these people have the power to hold him. Just like if you were doing a habeas analysis, you would look to see if under state law, a Wisconsin state court had the power to hear a claim. And that is a minimum afforded by the 14th Amendment. Do you think that line of analysis is consistent with Hewitt v. Helms? I think so, Your Honor, because again, the Hewitt and Wolf both say that there is a minimum of due process afforded by the 14th Amendment. You get a panel that's competent to hold you. You get notice. You get a written decision afterwards based on whether or not that explains why you've been held. And so, again, whether or not a panel has competence to hold you does fit this sort of bare minimum of the 14th Amendment that is required based on... But the competency, it seems, you're not talking about, you know, for example, like the prior appeal. We're not talking about alleged bias or anything like that. You're talking about in terms of when the hearing was held vis-a-vis a requirement of state law. I'm talking about competency in terms of strictly, in terms of what Wisconsin says is competent because that's all we have to look to. If state law is what empowers them, we have to look to state law for what would disempower them. But again, Your Honor, there is this secondary point that regardless of how you read the dates in Mr. Colafi's complaint, he was held for well over that 240-day floor that was set in Marion to state a claim for on the requirements of Marion. The plaintiff in Marion did not allege anything specific about his conditions that would indicate any level of atypicality. And Mr. Colafi did here. He discusses how being held in administrative segregation means he was in solitary. He was alone in a cell 24 hours a day with a light on. He had no human contact and no visitors. That is certainly enough at this stage to allow his complaint to proceed. But wouldn't, given that state procedures have these well-defined deadlines or parameters and the defendants on their own, if you take the allegations to be true, decided not to follow those procedures, wouldn't that put this case squarely within Hamlin v. Vandenberg and the parrot exception? So in other words, the procedures are fine, but it's what these individuals did. And so isn't the fact there's post-deprivation process sufficient? No, Your Honor. So parrot stands for this important but narrow exception of situations where a pre-deprivation hearing would have been entirely nonsensical or impossible. The running into the cell and flipping everything in violation of some sort of property rights or the losing mail, which is the example in parrot. And we didn't get a chance to real apply here. But if we had, we would have pointed the court to Armstrong v. Daley, which is at 786 F3 529. That does a really good job of laying out exactly the limitations of the parrot doctrine. And it says very specifically that a fact that an alleged wrongdoing also violated state law and could support a tort claim is not sufficient to invoke parrot. And it also said specifically that the mere fact that officials are violating a state law does not bring you into the parrot exception. It has to be the situation where the pre-deprivation hearing would be impractical or even nonsensical. But in this case, though, Mr. Felton went to state court, got an order from state court, right? He presumably could have gone back to state court to enforce that order. And so there clearly were kind of, he did have available to him post deprivation procedures that would have remedied the particular infringement on his rights that he claims to have been here, right? So he was, if we looked at the complaint, we see that he was speaking with the warden trying to understand why he hadn't been let out based on the original motion for reconsideration order, which says that he needs to be released. And then in November of that year, he's moved from the prison, which totally moots the certiorary issue. But he still is not able to seek any sort of remedy in this case damages for the ongoing violation by seeking enforcement of an order that's entirely mooted. So no, there weren't post deprivation remedies through the certiorary process available to him, either to get out because he was removed through another process, or tort remedies available to him, or certainly not tort remedies that he was limited specifically only to following. Because again, that paired exception is quite narrow, and this case does not fall into that exception. Still seems to me that you are arguing that the process due here is defined by the state law requirements. And I'm not sure how that violation of the state law equates to a federal due process claim. Certainly, Your Honor. So there are two ways that you can look at it. In the first instance, state law does play a role. It does not dictate what the process is due, but it does play a role. Because under Wolfe and Hewitt, there is a minimum of the 14th Amendment that says that you have to be, have a hearing before a panel of competent jurisdiction. The only way this court could know whether or not this panel was competent was to look to state law. Because state law is the body of law that would have given it competence in the first place. Does that just go to the question of the protected liberty interest in the first instance as opposed to the process due? I don't think so, Your Honor, because the liberty interest springs from the idea that he was held over that 240-day Marion floor in conditions that were atypical and significant to the ordinary incidents, in juxtaposition to the ordinary incidents of prison life. And then the question is, now that he has a liberty interest against being confined in those conditions, what process does the state have to afford him before they can do so? Why isn't the Ferris reading of that, though, on a panel of competent jurisdiction that it is competent? There's no allegation of bias. The hearing was held by people that are designated to hold hearings. It wasn't like they just rounded up a group of random employees to substitute on a particular day. That's what the Supreme Court has in mind when they talk about due process, not was it held on the exact right day under the law of some state. Your Honor, again, I think that the Supreme Court has not given a definition of minimum of competence. We look to the competence that is dictated by state law. That is how federal courts analyze whether or not a panel is competent. And here there is this regulation that apparently leads Wisconsin law to say the panel is incompetent. But again, there is the secondary point that regardless of whether or not there was some sort of separate federal floor for jurisdiction, Mr. Cloffey was held far past the floor set in Marion without a hearing based on the allegations in his complaint broadly construed. And that is sufficient for him to be able to proceed. Your point there, to go back to the question and comment that Judge Lee was making, is that we really don't know what went on in these other hearings. There are plenty of indications that there were other hearings, but given that we don't know the content, it looks like the disciplinary segregation continued for 678 days. Yes, Your Honor. And a broad construction of a pro se complaint, that is what we have to see at this point in time, and he should be able to proceed. If it's all right, I'd like to reserve my last few seconds for rebuttal. No problem. We'll give you a couple minutes. You were appointed, right, just on the due process issue, correct? There's a lot of other issues that are swirling here. Yes. Okay. We're not yet. Thank you, Your Honor. Good morning, Mr. Morris. Good morning. May it please the Court, Michael Morris for the defendants' appellees. It is well settled that noncompliance with state law does not state a federal due process claim. That is all Mr. Calafi alleged in his proposed second amended complaint, so that rule should control here unless this Court is prepared to abandon that rule and constitutionalize every claim that a prisoner makes that a state rule was violated. I urge the Court to decline to do so. Do you agree if he had been held in administrative confinement for over 600 days without a hearing that there would be a violation, or he would have stated a claim? Well, Your Honor, I don't agree with that, for one thing, because one of the points that we argue on our brief is under this Court's precedence, and understand that administrative confinement is something that both this Court and the Supreme Court has treated differently than disciplinary segregation, which is not at issue here, and that, as this Court said in Licus, because discretionary segregation like administrative confinement is something that every prisoner should reasonably expect at some point, that does not rise to meet Sandin's high standard of a significant atypical deprivation because it's a part of ordinary prison life. Even if it's for over 600 days? I think those cases say that sometime, to the extent they say it at all, but sometime in administrative confinement might qualify. But if it's over 600 days and no hearing, you don't think there would be a due process claim alleged? Not under Sandin, not under Licus, and some of the other cases we said in our brief that What if you doubled it? Tripled it? Again, if it's still administrative confinement, Your Honor, that's what the cases say. I don't think this case rises to that level. There are lots of reasons why he didn't state a federal due process claim, even if 600 days, if you're not comfortable with that and don't want to draw that line, because it sounds absurd, I get that. At bottom, this is still a matter for the Wisconsin State Courts, and we know that from the complaint, because he did that. He petitioned the Dane County Circuit Court for certiorari, and he got the relief he sought. In fact, his complaint says that he initially was dissatisfied with the original remedy that the court issued, which was just a re-hearing at the January 2014 hearing. So he petitioned the court for reconsideration and said, no, the proper remedy is to vacate the January 14th confinement order. And the state court said, you're right. And so that's that August 2015 order that the state court issued that vacated that order. So Mr. Calafi's own complaint demonstrates that he had an adequate state remedy. He received the adequate state remedy. He just neglected to follow up when he received the warden's reply to enforce it, which is a remedy that every successful litigant in any court has. He didn't do that here, and so he put himself out of court, Your Honor. Can we switch to the Eighth Amendment? Yes. That's part of this, too, right? There's an Eighth Amendment claim. I don't believe he was allowed to proceed on an Eighth Amendment claim. No, right, right, right. Okay. Should he have been? At least as to warden, vis-a-vis warden Boutin. At screening, if memory serves, okay. Or there was a dismissal order that warden Boutin wasn't personally involved enough. Okay. When I look at what is alleged here to have transpired, it looks to me, tell me I'm wrong, but it looks to me like Mr. Calafi says, I was in contact with warden Boutin, or he was in contact with me, rather. In September of 2015, warden Boutin contacted me to tell me that I would remain in the solitary confinement until I was transferred to another facility, to WAPM. Okay. That looks to me like warden Boutin did have personal involvement. He actually communicated with the plaintiff. I see where you're going, Your Honor. Yes. So, in the proposed Second Amendment, amended complaint, yes, he does allege that he complained to the warden Boutin about still being in administrative confinement in contravention of the state court order. I believe what the complaint establishes there is that the warden's reply was something to the effect of, no, no, no, you're being held pursuant to a more recent administrative confinement decision, which is six months in duration, and by that time, he was scheduled to be transferred out of the prison within that six-month timeframe. There was also a disciplinary hearing after that that sentenced him to disciplinary segregation. I'm not exactly sure. I think that happened after this communication, which I believe was in August of 2015. Is that part of the record here? That goes to what Judge Lee was asking about earlier. We don't know a whole lot about these other hearings, at least that I can discern. It is a part of the record, Your Honor. Docket 36 contains a declaration from one of the prison employees, and all of the administrative confinement decisions are attached to that. Obviously, that's summary judgment, because part of his claims proceeded to summary judgment. Right. But we know from the record that he received the constitutionally required periodic hearings, because it's another independent reason why Mr. Coloppi failed to state a due process claim here, is because under Hewitt and under this Court's decision in Westerfer, the only process that an inmate in his shoes is entitled to are periodic redeterminations of that administrative confinement decision. And here, he received that and more. So that gets us back to the only... I'll come back to my first question I asked you. Did he receive periodic redeterminations if he was in custody for 678 days without a hearing, as he claims, or over 600 days? Can that satisfy periodic? I would just push back a little bit on that, Judge St. Eve, because I don't believe that's what he actually alleges. I know that's what the amicus says. Assume he did, if he alleges that he was in custody, the requirement that he is entitled to the process of periodic redeterminations about his custodial status. And in your hypothetical, we're looking beyond the distinction between administrative confinement and disciplinary... Yes. Okay. Yeah. I mean, that's a long time. I mean, the Supreme Court has never dictated a right-line rule. This Court hasn't either. I mean, what the courts have said is that it is within the prison's discretion. They have a wide range of discretion to run their prisons. This falls squarely within that. So I don't think the court should create right-line rules. I think the essence of what the court said in Hewitt is that it has to be periodic enough to ensure that someone isn't confined indefinitely. So whether 600 days, again, that is not what he pleads in his complaint. But in that hypothetical, maybe that's enough. I don't know. There's not a case on that. That is a long time though. But that's not what he alleges. What he alleges in his complaint is this January 2014 hearing was five days too late. That's in violation of the policy. That's paragraph eight. And from that day, from the day after the six-month period ran, I shouldn't have been in here. That's his claim. Not that, hey, I never received another hearing. In fact, Judge Eve, Sandy, you were right to point out in paragraph 12, he references another hearing that happened in December of 2014. There are references to hearings in 2015. So I think just looking at the four corners of the complaint, that meets Hewitt. He had these other hearings. Does it matter that we can't really tell at least what some of them were for? I don't think it matters, Your Honor. He was in administrative confinement. He alleges he had these other hearings while in administrative confinement. I think he pleads himself out of court on that. I want to switch gears just a moment to pick up on a little bit of what Judge Scotter was asking about. He does, the complaint itself seems to be all about due process. But he does throw in the Eighth Amendment. And he does allege conditions that are harsh. Is it your understanding that he was bringing in Eighth Amendment conditions of confinement claim? That is not my understanding. I don't recall that being in the screening order either. I think he was bringing a due process claim. And the reason that the court denied him leave to bring those claims was because he only alleged that they were the wardens and there was this one communication between one of the wardens where the warden explained, no, you're in here for a different reason. And rejecting an inmate grievance, which this court has held, is not involvement in the underlying deprivation. So I think that's not what I'm focused on here. I know that hasn't been the focus of the briefing and not the point that counsel was appointed for or is appearing here for. But I have some concerns given the language in the complaint and the allegations about the conditions as to whether or not he was attempting to bring a conditions of confinement claim. Your Honor, if that's something you would like supplemental briefing on, it's something I'm happy to do. Okay, that's fair. Thank you. Thank you. And I'll say, moving on to my final point about why Mr. Calafi failed to state a federal due process claim here. Again, under this court's Hamlin decision, where the alleged both the Supreme Court and this court has held that there is no due process violation where there are adequate state remedies. That rule applies here. There were, as I mentioned, adequate state remedies here. His complaint demonstrates that he knew how to obtain them. I think there was also a comment by the amicus counsel about how maybe that was mooted because he moved out of the prison and he couldn't get damages. I'll respond to that by saying first of all, when the warden responded to Mr. Calafi's complaint appeal, I think, procedurally, but when he responded to Mr. Calafi, that was in August of 2015. He didn't move out of that prison until November of 2015, so he had ample time to go back to the state court and complain, I'm still in segregation, I shouldn't be here. Secondly, this court has held in Hamlin, for example, that although state surgery remedies don't provide damages as state tort actions do, so to the extent that the damages are a part of his claim and I believe they are here, he had a state remedy for that as well under this court's Hamlin decision. So for these reasons, Your Honor, I do not believe that Mr. Hamlin stated a federal due process claim and I would ask the court to- Mr. Morris, can I hold you for a bit longer? Yes. Okay. And if this is something kind of outside the ambit of what you've prepared to address, you just say so. Walk us through why it was proper to enter summary judgment for the named defendant, Lebeus Brown. You know who that is? I do, Your Honor. Okay. The district court entered summary judgment ultimately for Lebeus Brown on the First Amendment retaliation claim. You recall that? I do, Your Honor. Okay. You believe that's proper? And the reason I'm asking you that is because there seems to be some evidence that the plaintiff brought forward that Officer Brown confiscated letters that the plaintiff was writing to fellow inmates that were being held in segregation. And those were for victory. You know what I'm talking about? I do. Okay. These other inmates were, I don't know if they actually were, they were alleged to be members of the same gang. And Officer Brown shouldered responsibility within the institution as I understand it for monitoring gang activity and mitigating it that way. And he confiscated those letters on the basis that it was part of an effort by the plaintiff to further gang activity. That seems quite questionable to me. It basically, it seems to me to be the plaintiff writing to fellow inmates saying, hey, I got a legal strategy that worked for me in challenging my segregated confinement and I'm going to tell you all about it because I'm getting you copies of my order. And if you too follow the same path I followed, maybe you'll get relief from some of the segregation. That's what I thought he was trying to do. Yeah, I would agree with Your Honor that, I apologize, I'm not too familiar with that. So if you just change the fact pattern and the plaintiff said, the United States Supreme Court just decided a decision that's favorable to us state prisoners. I'm asking my mom to make copies and I'm going to send one to each of you that way. And all of that is confiscated. That seems to be First Amendment, it seems to me to be protected activity. Yeah, I would agree. Protected speech. I agree with you. I think that would. So my question is, I'm not trying to put you on the spot. I mean, this is sprawling, there's a lot of pieces to it. I get that. How is this fact pattern materially different from my hypothetical? Well, in this fact pattern, his letter included the threat on the back. I don't know if you're referring to different communications. No, no, no. You're right. The outgoing letter to the mother, correct? Yes. On the back it was the letter to the brother that was the threat. I am referring to different communications. I'm referring to communications that the plaintiff had with fellow inmates. Letters he wrote to them that those letters, at least as I understand it, got confiscated by Officer Brown on the basis that it was gang activity. It was one gang member communicating with another gang member. Your Honor, I see my time is up. Yeah, go ahead. And if you don't know, you don't know. I'm not looking to kind of pop quiz you on it. My understanding of what his First Amendment claim, Your Honor, was that the confiscation of the threatening letter along with the court order was the First Amendment claim. I'm not familiar with these other communications or that those were part of his claim. Okay. Fair enough. All right. Very well. Thank you, Mr. Morris. Ms. Marshall, we'll give you a couple minutes on rebuttal. Yes, Your Honor. Broadly construed, as this court is required to do for a pro se plaintiff, Mr. Calafia alleges that he was held for over the 240-day court that this court set forth in Marion as a minimum to state a procedural due process claim. Now, Marion postdates Lekas, and Lekas, the case that the state relies on, also predates Wilkinson, which is the more recent case that lays out what constitutes an atypical and significant hardship. And in Wilkinson, the prisoners that were confined to OSP were placed there at the start of their confinement and continually placed there throughout their confinement, yet were still entitled to periodic rehearing. This is to say, Your Honors, that no matter how long Mr. Calafia may or may not have been in administrative confinement prior to this January 15th hearing, he certainly had been there. That is not dispositive and does not impact the fact that this court has said in Marion that 240 days is sufficient to state a claim for procedural due process. He has done that here, and this court should reverse and allow him to proceed on that claim. If there are no further questions, we'll rest on the briefs. Okay. Ms. Marshall, thank you very much. We're well aware that we appointed you and your firm to argue as a friend of the court. On behalf of Mr. Felton, you've done that very well. You and your firm have our thanks, and of course, Mr. Morris, you have our thanks too. We'll take the appeal under advisement.